UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RONALD STULL and WILLIAM C. FRANKE, | * * * | |
| Plaintiffs, | * * * | |
| | * | Civil Action No. 11-11549-JLT |
| | * | |
| TOWN OF WEYMOUTH, TOWN OF BRAINTREE, EDWARD A. HANCOCK, DARREN KING, and MATTHEW HESLAM, | * * * * | |
| | * | |
| Defendants. | * | |

MEMORANDUM

October 9, 2013

TAURO, J.

I.    Introduction

Plaintiffs Ronald Stull and William C. Franke bring this suit against Defendants Town of

Weymouth, Town of Braintree, Edward A. Hancock, Darren King, and Matthew Heslam for

alleged civil rights violations under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act

and for various alleged torts. Presently at issue are six pending motions for summary judgment:

Defendant Town of Weymouth's Motion for Summary Judgment on Claims of Plaintiffs [#37];

Defendant King's Motion for Summary Judgment [#41]; Defendant Hancock's Motion for

Summary Judgment [#45]; Defendant Heslam's Motion for Summary Judgment [#61];

Defendant Town of Braintree's Motion for Summary Judgment [#62]; and Defendant Town of

Weymouth's Motion for Summary Judgment on Cross-Claim of Defendant, Town of Braintree

[#33]. For the following reasons, all of these Motions are ALLOWED.

II.    Background[1]

At 12:25 a.m. on September 30, 2009, Jonathan Spear, a resident of a property adjacent to

Plaintiff Stull's residence, placed a 911 call to the Weymouth Police.[2] Spear complained that

three men had been yelling and screaming for the previous two hours in the parking lot of Stull's

residence and that two of the men were acting extremely belligerently toward each other.[3] Before

he called the police, Spear observed the two men shove each other a few times.[4]

Defendant Hancock, an officer of the Town of Weymouth Police Department, responded

to the scene.[5] Hancock had responded to Stull's residence for past incidents, including

disturbances, drug activity, fights, dog complaints, probation violations, warrant services, and

drug overdoses.[6]

Upon his arrival in the parking lot, which was dark, Hancock observed three men: Stull,

---

[1] When analyzing a motion for summary judgment, a court must set forth the facts in the light most favorable to Plaintiffs, as supported by the record. See De La Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000) (citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)). Here, Plaintiffs did not oppose any of the motions for summary judgment, nor did they file their own statement of material facts. Local Rule 56.1 provides that all facts set forth in a statement of material facts that are unopposed by the non-moving party are deemed admitted. For that reason, this court sets forth the facts as provided in Defendants' statements of material facts.

[2] Statement Relevant Facts Supp. Def., Town Weymouth's Mot. Summ. J. ¶ 13 [#39] [hereinafter Weymouth's Facts]; see Weymouth's Facts ¶ 2 [#39]. Because all of Defendants' statements of facts are identical or nearly identical, for the sake of simplicity, this court cites only to Defendant Town of Weymouth's statement of facts.

[3] Weymouth's Facts ¶¶ 14, 15 [#39].

[4] Weymouth's Facts ¶¶ 16, 18 [#39]. Specifically, Spear told the dispatcher: "They're in the back parking lot. There's like two or three guys out there and they have been screaming. Someone's hitting someone. I don't even know. They've been going on for like two and a half hours now." Weymouth's Facts ¶ 17 [#39].

[5] Weymouth's Facts ¶¶ 2, 10, 19 [#39].

[6] Weymouth's Facts ¶ 20 [#39].

Plaintiff Franke, and Paul Franke.[7] The Frankes appeared intoxicated, and Stull was flailing his arms toward the other men.[8] Spear, watching from his window, heard Stull scream: "Oh look, Weymouth's finest."[9] After Hancock exited his cruiser, Stull shouted at him: "Come on you wanna fight me too, I'll fucking kill you and your dog."[10] Stull then grabbed Plaintiff Franke and raised his fist toward him as if he were going to hit Plaintiff Franke.[11]

Hancock yelled, "Don't do it!"[12] Stull pushed Plaintiff Franke to the ground and started toward Hancock with clenched raised fists.[13] It looked like Plaintiff Franke, too, was getting up and moving toward Hancock.[14] Spear saw both men disobey Hancock's request that they calm down, and they were both "trying to get right in [Hancock's] face."[15]

Hancock decided he was going to arrest Stull for Disorderly Conduct and Assault and Battery.[16] He broadcast over the Weymouth Police band radio that he needed assistance and requested another car at the location.[17] While he was the only officer on the scene, and Stull

---

[7] Weymouth's Facts ¶¶ 22, 25 [#39]. Paul Franke is Plaintiff Franke's half-brother and Stull's step-brother. Weymouth's Facts ¶¶ 8, 9 [#39].

[8] Weymouth's Facts ¶¶ 23, 26 [#39].

[9] Weymouth's Facts ¶ 27 [#39]; see Weymouth's Facts ¶ 24 [#39].

[10] Weymouth's Facts ¶ 28 [#39].

[11] Weymouth's Facts ¶ 30 [#39].

[12] Weymouth's Facts ¶ 31 [#39].

[13] Weymouth's Facts ¶ 32 [#39].

[14] Weymouth's Facts ¶ 33 [#39].

[15] Weymouth's Facts ¶ 34 [#39].

[16] Weymouth's Facts ¶ 35 [#39].

[17] Weymouth's Facts ¶ 36 [#39].

continued to approach Hancock in a threatening manner, Hancock ordered Stull onto the ground.[18] Stull refused to comply and continued to approach Hancock in a threatening manner.[19] Hancock feared that Stull might cause him harm, so he retrieved his K-9 Partner, Hax, from the cruiser.[20] With Hax on a leash,[21] Hancock repeated his commands to Stull to get on the ground, but Stull refused to comply and continued to challenge Hancock to fight him.[22]

Just before Defendant King, another officer of the Town of Weymouth Police Department, arrived, Stull finally complied by lying on the ground face down.[23] When King arrived, Hancock returned Hax to the cruiser and helped King handcuff Stull.[24] While Hancock and King were handcuffing Stull, Paul Franke was standing off to the side, and Plaintiff Franke was approximately twenty feet away, pacing, yelling, and swearing.[25]

Defendant Heslam, an officer of the Town of Braintree Police Department, had been scanning the Weymouth Police band radio and heard Hancock's call for assistance, so he, too, went to Stull's residence.[26] Heslam arrived while Hancock and King were handcuffing Stull.[27]

---

[18] Weymouth's Facts ¶ 38 [#39].

[19] Weymouth's Facts ¶¶ 39, 41 [#39].

[20] Weymouth's Facts ¶¶ 40, 41 [#39].

[21] Hax remained on the leash the entire time he was outside of the cruiser. Id. ¶ 44.

[22] Weymouth's Facts ¶ 42 [#39].

[23] Weymouth's Facts ¶¶ 11, 43 [#39].

[24] Weymouth's Facts ¶¶ 46–49, 55 [#39].

[25] Weymouth's Facts ¶¶ 50, 69–72 [#39].

[26] Weymouth's Facts ¶¶ 3, 12, 51–52 [#39].

[27] Weymouth's Facts ¶ 53 [#39].

At 12:32 a.m., King reported on the radio: "We've got one in custody."[28] At 12:35 a.m., Hancock wanted a van to transport Stull and asked on the radio, "33 can we have a wagon down here please?"[29] After this request, Stull's demeanor changed and he appeared to be in need of medical attention.[30] At 12:36 a.m. Hancock asked on the radio, "33 can I have an ambulance down here please."[31]

During Stull's arrest, Plaintiff Franke continued to pace around, yell loudly, and swear.[32] Heslam asked Plaintiff Franke to calm down.[33] Plaintiff Franke responded "fuck you" and "go fuck yourself" to Heslam.[34] Heslam asked Plaintiff Franke to keep his hands out of his pockets and had to repeat this request four to five times before Plaintiff Franke complied.[35] Hancock approached Plaintiff Franke and Heslam, and Plaintiff Franke started yelling, swearing, and pointing his finger at Hancock.[36] Hancock and Heslam performed a double arm bar takedown, in which they guided, directed, and supported Plaintiff Franke to the ground, and Hancock handcuffed Plaintiff Franke.[37] Heslam performed a pat frisk and recovered a three- to four-inch

---

[28] Weymouth's Facts ¶ 56 [#39].

[29] Weymouth's Facts ¶ 66 [#39].

[30] Weymouth's Facts ¶ 67 [#39].

[31] Weymouth's Facts ¶ 68 [#39].

[32] Weymouth's Facts ¶¶ 50, 69–72 [#39].

[33] Weymouth's Facts ¶ 70 [#39].

[34] Weymouth's Facts ¶ 72 [#39].

[35] Weymouth's Facts ¶ 74 [#39].

[36] Weymouth's Facts ¶ 76 [#39].

[37] Weymouth's Facts ¶¶ 78–79 [#39].

5

folding knife from Plaintiff Franke's pocket.[38]

While on the ground, Plaintiff Franke complained of knee pain, so the officers placed him in a position lying on his right side, with Heslam holding Plaintiff Franke's head off the ground with one hand and holding his shoulder with the other hand.[39] At 12:50 a.m., the officers called for a second ambulance for Plaintiff Franke due to his complaints of knee pain.[40]

At the hospital, Stull continued to act belligerently, yelling and swearing at doctors and hospital staff.[41]

Hancock applied for criminal charges against Plaintiffs for Disorderly Conduct and Assault and Battery, based on Hancock's observations of their behavior.[42] The Clerk-Magistrate did not issue the Assault and Battery charge but continued the Disorderly Charge for six months.[43]

III.   Discussion

A court will "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[44] That is, a court must grant summary judgment if "the record taken as a whole could not lead a rational

---

[38] Weymouth's Facts ¶ 80 [#39].

[39] Weymouth's Facts ¶¶ 81, 83 [#39].

[40] Weymouth's Facts ¶ 84 [#39].

[41] Weymouth's Facts ¶ 88 [#39].

[42] Weymouth's Facts ¶ 89 [#39].

[43] Weymouth's Facts ¶ 90 [#39].

[44] Fed. R. Civ. P. 56(a).

trier of fact to find for the non-moving party."[45]

    A.    <u>Section 1983</u>

        To prove a violation of § 1983, a plaintiff must demonstrate that (1) the defendant deprived the plaintiff of a federal constitutional or statutory right while acting under the color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States.[46] When analyzing a § 1983 claim, a court must "isolate the precise constitutional violation" and apply "the specific constitutional standard which governs that right."[47]

        If, for example, a plaintiff in a § 1983 action alleges a violation of his or her Fourth Amendment right to be secure from unreasonable seizures, the Fourth Amendment and its "reasonableness" standard govern.[48] Taking a person into custody does not qualify for Fourth Amendment protection unless it is also deemed unreasonable, because the Fourth Amendment permits police officers to use such force as is "'objectively reasonable' in light of the facts and circumstances confronting them."[49] In assessing the reasonableness of a police officer's actions "in cases where potential danger, emergency conditions or other exigent circumstances are present[,] . . . the 'calculus of reasonableness' must make 'allowance' for the need of police

---

[45] <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). Further, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," there is no genuine issue as to any material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986).

[46] <u>Martinez v. Colon</u>, 54 F.3d 980, 984 (1st Cir. 1995) (citing <u>Chongris v. Bd. of Appeals</u>, 811 F.2d 36, 40 (1st Cir. 1987), <u>cert. denied</u>, 483 U.S. 1021 (1987)).

[47] <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989).

[48] <u>See</u> <u>id.</u> at 394–95.

[49] <u>Id.</u> at 397 (citing <u>Scott v. United States</u>, 436 U.S. 128, 137–39 (1978)).

officers 'to make splitsecond judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'"[50]

To establish a Fourth Amendment excessive force claim, a plaintiff must show that the defendant employed force that was unreasonable.[51] To determine whether the amount of force the officer used was reasonable, a court must consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[52]

      1.   <u>Unlawful Police Conduct</u>

Counts I through IV of the <u>Complaint</u> charge Defendants Hancock, King, and Heslam (collectively, the "Officer Defendants") with unlawful police conduct under § 1983.[53]

The defense of qualified immunity "shields law enforcement officials who reasonably but mistakenly believe that they are acting in accordance with constitutional mandates."[54] In evaluating a claim of qualified immunity, a court must first decide whether the facts "'show the officer's conduct violated a constitutional right.'"[55] If so, the court must determine "whether the right was clearly established so that 'it would be clear to a reasonable officer that his conduct

---

[50] <u>Roy v. Inhabitants of Lewiston</u>, 42 F.3d 691, 695 (1st Cir. 1994) (quoting <u>Graham</u>, 490 U.S. at 396–97).

[51] <u>See</u> <u>Graham</u>, 490 U.S. at 396; <u>Asociación de Periodistas v. Mueller</u>, 529 F.3d 52, 59 (1st Cir. 2008).

[52] <u>Graham</u>, 490 U.S. at 396 (citing <u>Tennessee v. Garner</u>, 471 U.S. 1, 8–9 (1985)).

[53] Compl., 5–7 [#1].

[54] <u>Medeiros v. Town of Dracut</u>, 21 F. Supp. 2d 82, 85 (D. Mass. 1998) (citing <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991)).

[55] <u>Gutierrez v. Mass. Bay Transp. Auth.</u>, 437 Mass. 396, 404 (2002) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).

was unlawful in the situation he confronted.'"[56]

Here, the Officer Defendants are entitled to qualified immunity because the evidence establishes that they reasonably believed they were acting in accordance with constitutional mandates.[57] The arrests of Plaintiffs did not violate the Fourth Amendment. When Hancock arrived on the scene and saw Stull commit an assault and battery on Plaintiff Franke, Hancock and King made the decision to arrest Stull in a situation in which potential danger was present.[58] Similarly, Heslam and Hancock placed Plaintiff Franke in custody after he behaved aggressively. The arrests of Stull and Franke thus did not violate the Fourth Amendment.

Nor did the Officer Defendants use excessive force in violation of the Fourth Amendment. While Hancock was alone at the scene, the threat to Hancock was relatively grave. He was alone in a parking lot with three men who had been fighting with each other and were indicating that they wanted to fight him, too. Under those circumstances, it was entirely reasonable for Hancock to use Hax to assist him when he compelled Stull to the ground. There is no evidence that Hancock used Hax as a weapon: Hax was on a leash the entire time he was outside his cruiser, and he did not come into contact with anyone during the incident. When King arrived, Stull was already lying face down on the ground, and King simply handcuffed him. With regard to Plaintiff Franke, Heslam and Hancock brought him to the ground in a controlled manner consistent with police practices. After handcuffing Plaintiff Franke, Heslam performed a standard pat frisk.

Given the foregoing, it is clear that the Officer Defendants acted reasonably. They are

---

[56] Id. (quoting Saucier, 533 U.S. at 202).

[57] See Medeiros, 21 F. Supp. 2d at 85.

[58] See Roy, 42 F.3d at 695.

thus entitled to a defense of qualified immunity, and the § 1983 claims against them must be dismissed.

        2.    <u>Failure to Train</u>

Counts V through X of the <u>Complaint</u> charge Defendants Town of Weymouth and Town of Braintree (collectively, the "Town Defendants") with failure to train the Officer Defendants under § 1983.[59]

A municipality can be held liable on a § 1983 claim only if some municipal "policy or custom" caused the alleged constitutional violation.[60] Further, the municipal policy or custom must have actually caused the plaintiff's injury, and the municipality must have possessed the requisite level of fault, which is usually "deliberate indifference."[61] A municipality can be liable for a failure to train officers only if the failure "'amounts to *deliberate indifference* to the rights of persons with whom the police come into contact,' and is 'closely related' to, or 'the moving force' behind, the constitutional injury."[62]

Here, Plaintiffs make generic allegations that the Town Defendants failed to properly train the Officer Defendants. Plaintiffs are required, however, to show that the alleged failure to train was the cause of a constitutional deprivation. Here, perhaps, that might amount to a

---

[59] Compl., 8–12 [#1].

[60] <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978) ("Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[,] . . . [or] for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." (internal citations omitted)).

[61] <u>See</u> <u>Bd. of the Cnty. Comm'rs v. Brown</u>, 520 U.S. 397, 404 (1997).

[62] <u>Hayden v. Grayson</u>, 134 F.3d 449, 456 (1st Cir. 1998) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 388–89 (1989)).

showing that Plaintiff's alleged injuries were the result of inadequate training on proper arrest protocols. But Plaintiffs have failed to establish any evidence at all that their alleged injuries were the result of inadequate training. Plaintiffs have thus failed to allege the required nexus between their alleged injuries and the alleged inadequate training,[63] let alone "deliberate indifference" on the part of the Town Defendants.[64] As such, the counts charging the Town Defendants with failure to train under § 1983 are dismissed.

B.    Negligence

Counts XI through XIV charge the Officer Defendants with negligence.[65] Specifically, Plaintiffs allege that the Officer Defendants used excessive force against Plaintiffs.[66]

The Massachusetts Torts Claims Act[67] immunizes public employees from personal liability for negligence while acting within the scope of their employment.[68] Similarly, at common law, a public official exercising judgment and discretion is not liable for negligence in the making of an official decision, if the official acted in good faith and without malice or corruption.[69]

Plaintiffs' negligence claims against the Officer Defendants seem to be based on the

---

[63] See Monell, 436 U.S. at 690; Hayden, 134 F.3d at 456.

[64] See Brown, 520 U.S. at 404; Hayden, 134 F.3d at 456.

[65] Compl., 13–15 [#1].

[66] Compl., 13–15 [#1].

[67] Mass. Gen. Laws ch. 258, § 2.

[68] Petricca v. City of Gardner, 194 F. Supp. 2d 1, 4 (D. Mass. 2002) (citing Mass. Gen. Laws ch. 258, § 2; McNamara v. Honeyman, 406 Mass. 43, 46 (1989); Taplin v. Town of Chatham, 390 Mass. 1, 2 (1983)).

[69] Duarte v. Healy, 405 Mass. 43, 50 n.5 (1989) (citing Gildea v. Ellershaw, 363 Mass. 800, 820 (1973)).

same issue as their § 1983 claims alleging excessive force. As described above,[70] there is no evidence that the Officer Defendants acted unreasonably nor used excessive force. As such, the Officer Defendants are immune from Plaintiffs' negligence claims, and these claims are dismissed.

###### C.    Assault and Battery

Counts XV through XVII charge the Officer Defendants with assault and battery.[71] The standard for determining whether a police officer used reasonable force "for assault and battery claims is 'essentially the same' as the standard for determining if force is reasonable for Fourth Amendment excessive force claims."[72] For that reason, if "a plaintiff alleges both a Fourth Amendment excessive force claim and an assault and battery claim in the same complaint, the constitutional claim and the common law claim 'rise and fall in the same manner.'"[73] Because this court determines that the Officer Defendants did not use excessive force against Plaintiffs,[74] Plaintiffs' assault and battery claims also fail.

###### D.    Abuse of Process and Malicious Prosecution

Count XVIII charges Hancock with abuse of process and Count XIX charges him with malicious prosecution.[75]

The elements of an abuse of process claim are: "'(1) process was used; (2) for an ulterior

---

[70] See supra Part III.A.1.

[71] Compl., 16–17 [#1].

[72] Parker v. Town of Swansea, 270 F. Supp. 2d 92, 102 (D. Mass. 2003) (citing Julian v. Randazzo, 380 Mass. 391, 396 (1980)).

[73] Id. (quoting Jesionowski v. Beck, 937 F. Supp. 95, 105 (D. Mass. 1996)).

[74] See supra Part III.A.1.

[75] Compl., 18–19 [#1].

or illegitimate purpose; (3) resulting in damage.'"[76] To succeed on a claim of malicious prosecution, a plaintiff must demonstrate that: (1) the defendant knew there was no probable cause for the prosecution, and (2) the defendant was motivated by malice.[77]

Here, there is no evidence that Hancock abused the criminal process or maliciously prosecuted Stull. Rather, Hancock believed a crime had been committed and arrested Stull on that basis. With regard to the abuse of process claim, there is no evidence that Hancock had any ulterior or illegitimate purpose when he arrested Stull or when he applied for criminal charges against him.[78] With regard to the malicious prosecution claim, Hancock had probable cause to arrest Stull for disorderly conduct and for assault and battery. Hancock knew that the 911 caller had seen and heard Plaintiffs fighting for hours, and Hancock himself saw Stull push Plaintiff Franke to the ground.[79] Further, there is no evidence that Hancock was motivated by malice when he arrested Stull.

For these reasons, there is no evidence to support Stull's abuse of process and malicious prosecution claims. These counts are accordingly dismissed.

---

[76] Andrews v. S. Coast Legal Servs., 582 F. Supp. 2d 82, 91 (D. Mass. 2008) (quoting Gutierrez, 437 Mass. at 407). "'Process' for abuse of process purposes 'refers to the papers issued by a court to bring a party or property within its jurisdiction,' such as ' . . . the process related to the bringing of criminal charges.'" Id. (quoting Jones v. Brockton Pub. Mkts., Inc., 369 Mass. 387 (1975)).

[77] See Beecy v. Pucciarelli, 387 Mass. 589, 593–94 (1982) (citing Nelson v. Miller, 607 P.2d 438 (Kan. 1980)).

[78] Plaintiffs allege that Hancock's improper purpose was that he was attempting to cover up "his unlawful conduct in assaulting and beating, and violating the civil rights of," Stull. Compl. ¶ 90 [#1]. Not only is there no evidence that Hancock arrested Stull for these reasons, there is also no evidence that Hancock assaulted or beat anyone or violated anyone's civil rights. See supra Part III.A.1.

[79] Moreover, the Clerk-Magistrate did not immediately dismiss the disorderly conduct charge, which suggests that Hancock had more than probable cause to arrest Stull.

E.    Massachusetts Civil Rights Act

1.    Qualified Immunity

Counts XX, XXIII,[80] and XXIV assert claims against the Officer Defendants under the

Massachusetts Civil Rights Act ("MCRA").[81] Qualified immunity as developed under federal

law also shields public officials from liability under the MCRA.[82] Because the Officer

Defendants are entitled to qualified immunity for Plaintiffs' § 1983 claims,[83] they are also

immune to Plaintiffs' MCRA claims. These counts are thus dismissed.

2.    Vicarious Liability

Counts XXVI through XXVIII charge the Town of Weymouth[84] with vicarious liability

under the Massachusetts Torts Claims Act ("MTCA").[85]

The MTCA expressly exempts public employers from liability for the intentional torts of

their employees.[86] Further, negligence claims based on the failure to prevent or mitigate a harm,

and on the failure to train and failure to supervise employees, are also exempted from the

---

[80] Plaintiff omitted Counts XXI and XXII from the Complaint. See Compl. [#1].

[81] Compl., 20–22 [#1].

[82] See Shabazz v. Cole, 69 F. Supp. 2d 177, 210 (D. Mass. 1999) (citing Duca v. Martins, 941 F. Supp. 1281, 1294 (D. Mass. 1996)).

[83] See supra Part III.A.1.

[84] Although Plaintiffs charge all three of these counts against the Town of Weymouth, they likely intended to charge Count XXVIII against the Town of Braintree rather than the Town of Weymouth, because Heslam is an employee of the Town of Braintree. Regardless, this court's analysis of the Town of Weymouth's immunity under the MCRA applies to both Town Defendants.

[85] Compl., 23–25 [#1].

[86] See Mass. Gen. Laws ch. 258, § 10(c).

MTCA.[87] These counts are thus dismissed.

### 3. Indemnification

Counts XXIX through XXXI charge the Town Defendants with indemnification of Hancock and Heslam.[88] But only the Officer Defendants, if found liable to Plaintiffs, have standing to sue the Town Defendants for indemnification.[89] Plaintiffs themselves have no standing to claim indemnification on behalf of the Officer Defendants. Further, section 9 of Massachusetts General Laws chapter 258, to which Plaintiffs cite in these counts, permits but does not require a municipality to indemnify its employees.[90] For these reasons, these counts are dismissed.

### F. Contribution and Express Indemnity

In its Crossclaim against the Town of Weymouth, the Town of Braintree asserted a claim for contribution and a claim for express indemnity.[91] Because this court dismisses all of the counts of the Complaint, thereby determining that the Town of Braintree is not at all liable in this action, there is no award for which the Town of Braintree can seek contribution and indemnity.[92]

---

[87] See Mass. Gen. Laws ch. 258, § 10(h), (j); Armstrong v. Lamy, 938 F. Supp. 1018, 1044 (D. Mass. 1996); see also Doe v. D'Agostino, 367 F. Supp. 2d 157, 177 (D. Mass. 2005) (Tauro, J.).

[88] Compl., 25–27 [#1].

[89] Cf. Restivo v. Swansea, 398 Mass. 1002, 1003 (1986) (holding that Massachusetts law "does not require the defendant town to satisfy the plaintiffs' Federal District Court judgments against the town's police officers").

[90] See, e.g., Williams v. City of Brockton, No. 12-10430, 2013 U.S. Dist. LEXIS 8388, at *14 (D. Mass. Jan. 22, 2013) ("Section 9 provides 'public employers with the *discretion* to indemnify public employees for financial loss and expenses arising from certain civil actions . . . .'" (quoting Triplett v. Town of Oxford, 439 Mass. 720, 726 (2003))).

[91] Answer, Affirmative Defenses & Jury Claim Town Braintree & Matthew Heslam, 10–11 [#12].

[92] This court does not reach the question of whether, if the Town of Braintree *were* liable to

This court therefore grants summary judgment in favor of the Town of Weymouth.

IV.     Conclusion

        For the foregoing reasons, Defendant Town of Weymouth's <u>Motion for Summary Judgment on Claims of Plaintiffs</u> is ALLOWED; Defendant King's <u>Motion for Summary Judgment</u> is ALLOWED; Defendant Hancock's <u>Motion for Summary Judgment</u> is ALLOWED; Defendant Heslam's <u>Motion for Summary Judgment</u> is ALLOWED; Defendant Town of Braintree's <u>Motion for Summary Judgment</u> is ALLOWED; and Defendant Town of Weymouth's <u>Motion for Summary Judgment on Cross-Claim of Defendant, Town of Braintree</u> is ALLOWED. AN ORDER HAS ISSUED.

                                                    /s/ Joseph L. Tauro
                                                    United States District Judge

---

Plaintiffs, the Town of Braintree would be eligible for contribution and/or express indemnity from the Town of Weymouth.